UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLIED WASTE TRANSPORTATION, INC. d/b/a Allied Waste Services of Edwardsville, Plaintiff/Counterdefendant, v. TEAMSTERS LOCAL UNION NO. 50, Defendant/Counterclaimant. | Case No. 13-cv-268-JPG-PMF |

**MEMORANDUM AND ORDER**

This case arises following an arbitration decision in favor of defendant/counterclaimant Teamsters Local Union No. 50 ("Union") and against plaintiff/counterdefendant Allied Waste Transportation, Inc. ("Allied"). Allied asks the Court to vacate the decision, and the Union asks the Court to confirm it. This matter comes before the Court today on the parties' cross-motions for summary judgment (Docs. 18 & 28), to which the respective parties have responded (Docs. 28 & 30). The Court also considers the Union's motion for sanctions under Federal Rule of Civil Procedure 11 (Doc. 17), to which Allied has responded (Doc. 20), and Allied's motion to strike (Doc. 21).

**I.    Facts**

Union member Bobby Reeves was employed as a driver by Allied, a commercial and residential solid waste disposal company, since 2004. This employment was governed by a collective bargaining agreement ("CBA") between the Union and Allied. Under the CBA, Allied retained "the right to suspend, discipline, or discharge for just cause . . .; [and] to make and enforce reasonable rules and regulations . . . except as expressly abridged by the specific provisions of this Agreement." CBA Art. IV § 1. The CBA also contained the following provisions:

> **Section 1.** The Employer shall not take any disciplinary action without just cause. The Employer shall not suspend or discharge without first giving the employee two documented warning notices of the complaint against such an employee, with a copy of the same to the Union and Job Steward. No such written notice is required prior to the suspension or discharge of any employee where cause is: . . . recklessness or negligence resulting in an accident or injury while on duty, . . . destruction of Company owned or leased property, . . . or the violation of a Company rule or regulation established as required under Article IV of this Agreement. The Company has the burden of proof in establishing violations.
>
> **Section 2.** The employer shall furnish to the Union a copy of every written warning and notice of every disciplinary suspension or discharge within two (2) working days after the disciplinary action is taken. Except for written disciplinary notices issued for preventable injury and/or accidents . . . , disciplinary notices shall not be used as a basis for further step discipline after the expiration of nine (9) calendar months from the date of issuance. Written disciplinary notices issued for preventable accidents shall remain active for twelve (12) calendar months from issuance.

CBA, Art. V. The CBA does not define "just cause" and does not expressly provide that an employee will or must be terminated after three "preventable" accidents within a twelve-month period.

The parties further agreed in the CBA to a grievance procedure that culminated in final binding arbitration:

> **Section 2. Authority of the Arbitrator.** The arbitrator shall have no right to amend, modify, nullify, ignore, add to nor subtract from the provisions of this Agreement. The arbitrator shall consider and decide only the question of fact as to whether there has been a violation, misinterpretation or misapplication of the specific provisions of this Agreement as submitted to him/her by the parties and shall have no authority to make a decision on any issue not so submitted to him/her/them.
>
> The arbitrator shall have the power to determine the issue raised by the grievance as submitted in writing. The arbitrator shall be without power to make decisions contrary to or inconsistent with applicable federal or state law or applicable rules and regulations of government agencies, having the force and effect of law.
>
> **Section 3. Decision of the Arbitrator.** The decision shall be based solely upon the arbitrator's interpretation of the meaning or application of the specific terms of this Agreement to the facts of the grievance presented, consistent with applicable law. Consistent with these provisions, the arbitrator shall have the authority to make an award and to order an appropriate remedy, if applicable. A decision

rendered consistent with the terms of this Agreement shall be final and binding.
CBA Art. VI.

    Reeves had been a safe driver for Allied since he began working there in 2004 until he had a bad run of accidents in the fall of 2011. On October 25, 2011, he knocked over a telephone box with the Allied truck he was driving. The following day, he was issued a written disciplinary report for this incident, which Allied viewed as preventable. On November 5, 2011, he hit a wooden enclosure with a dumpster he was hoisting with the Allied truck he was driving and caused minor damage. Although Reeves reported the incident immediately, no disciplinary report was issued for this incident at the time. On November 7, 2011, the Allied truck he was driving was damaged while he was driving it through a wheel-washing facility. The arm of the truck was down when it should have been up and was bent as Reeves drove through the washer. The next day, he was issued another written disciplinary report for the wheel-washing accident, which Allied also viewed as preventable. Reeves was suspended for three days pending an investigation and then on November 14, 2011, was terminated. The Union grieved his termination and pursued the issue to arbitration. After holding a hearing, the arbitrator decided in the Union's favor, approved the three-day suspension and ordered Allied to reimburse Reeves the pay and benefits he suffered because of his termination.

    In arriving at this decision, the arbitrator noted that the issues before him were whether there was just cause to terminate Reeves and, if there was no just cause, what the appropriate remedy was. He then acknowledged the relevant portions of the CBA, including but not limited to the requirement of just cause before termination. He then reviewed the facts, including Reeves disciplinary history during his employment, Allied's current emphasis on safety and accident prevention, the evidence of the circumstances surrounding the three accidents in the fall of 2011, and the grievance proceedings between Allied and the Union. The arbitrator then explained the

3

generally accepted meaning of "just cause" in the labor-management context, and accepted that understanding in the absence of a definition of "just cause" in the CBA.  He further noted that it was Allied's burden to show it had "just cause" for imposing discipline on Reeves.

The arbitrator concluded that Allied failed to follow its progressive discipline procedure of "giving the employee two documented warning notices of the complaint against such an employee," CBA Art. V, § 1, before suspending or terminating him.  The arbitrator construed this provision to mean Allied has "a practice of giving lesser discipline for the first two 'accidents' while discharging an employee for the third offense."  Arb. Decision & Award at 13.  The arbitrator further found Allied's finding of three preventable accidents to justify termination was not supportable.  He concluded that the October 25 and November 5, incidents were preventable but that the preponderance of the evidence demonstrated that the November 7 incident was not. In drawing this conclusion about the November 7 incident, the arbitrator gave little, if any, weight to the Union steward's testimony that multiple other trucks had had malfunctioning hydraulics that caused arms to go down when they should be up.  However, he found compelling the repair order history for the truck Reeves' was driving that showed the hydraulics in the arm on his truck needed repair and Reeves' long history of good driving.  Because this accident was not preventable by Reeves and because the November 5 accident was so minor, the arbitrator found there was not "just cause" for terminating Reeves and reduced the discipline to a three-day suspension.

Allied filed this lawsuit in March 2013 seeking to vacate the arbitrator's decision.  In May 2013, the Union answered and filed a counterclaim to confirm the arbitrator's award.  The Union then served on Allied a motion for sanctions under Federal Rule of Civil Procedure 11 claiming that Allied's claims in this lawsuit are groundless and without legal precedent in light of the high standard that must be met before a court will overturn an arbitrator's decision.  The Union filed the motion with the Court after Allied failed to withdraw its complaint within 21 days after it

4

received the motion. (Doc. 17).   Allied then moved for summary judgment (Doc. 18).   The Union's response to that motion contained a cross-motion for summary judgment (Doc. 28). Allied responded to that filing (Doc. 30).   Additionally, Allied asks the Court to strike a memorandum filed by the Union ostensibly in support of its counterclaim to enforce the arbitration award.   The Court will address the summary judgment motions before turning to the other motions.

**III.     Analysis**

    A.    <u>Legal Standards</u>

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   Because there are no issues of material fact, this case turns on which side is entitled to judgment as a matter of law.

Here, the question is whether the Court should vacate or confirm the arbitrator's award. The Court's role in reviewing an arbitration award is generally limited to considering whether the arbitrator's award "draws its essence from the collective bargaining agreement" and is not a dispensation of the arbitrator's "own brand of industrial justice."   *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).   To allow the Court plenary review of the merits of an arbitration award "would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final," and would deprive the parties to a CBA of what they bargained for in an arbitration clause – the arbitrator's construction of the CBA. *Id.* at 599.

Thus, the Court is generally limited to the question of whether the arbitrator exceeded the scope of the authority conferred on him by the parties.   *Butler Mfg. Co. v. United Steelworkers*,

336 F.3d 629, 632-34 (7th Cir. 2003); *Northern Ind. Pub. Serv. Co. v. United Steel Workers of Am.*, 243 F.3d 345, 346-47 (7th Cir. 2001). The Court should uphold the award as long as the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," even if he made a serious error in his decision. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (*per curiam*); *see United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 782-83 (7th Cir. 2007) (neither serious error nor incorrect or whacky decision justifies vacating award). The question "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987); *accord Clear Channel Outdoor, Inc. v. International Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670, 677-78 (7th Cir. 2009). The Court should vacate an arbitrator's award only where "the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Garvey*, 532 U.S. at 509 (internal quotations omitted). "[O]nly if there is no possible interpretative route to the award, so that a noncontractual basis can be inferred, may the award be set aside." *Ganton Techs., Inc. v. U.A.W., Local 627,* 358 F.3d 459, 462 (7th Cir. 2004) (internal quotations and brackets omitted).

    B.    <u>Analysis</u>

Allied asks the Court to vacate the arbitrator's award because his award was "arbitrary and capricious" and exceeded his authority in a number of ways. First, Allied argues that the finding with respect to the November 7, 2011, incident that the truck arm had extended on its own was without evidentiary support and was contrary to Reeves' own admission that the arm was fully retracted at the time of the incident. Allied notes that the repair order history for the relevant truck did not mention issues regarding the arm's hydraulic system but spoke only of leaks in a

completely separate hydraulic system.  Allied also argues that the arbitrator was incorrect in finding that Allied did not follow progressive discipline.  It notes Reeves had three accidents within a matter of weeks and had received two written disciplinary reports before his termination.  Allied also believes the arbitrator ignored Reeves' admission that he understood Allied has the right to determine whether an accident is preventable and exceeded his authority in determining that the November 7, 2011, accident was not preventable.  Finally, Allied argues the arbitrator's award is against public policy reflected in Federal Motor Carrier Safety Act ("FMCSA") regulations, 49 C.F.R. § 391.11(a)-(b), because it allows Allied to place an unsafe driver back on the road.

In response, the Union objects to numerous factual assertions by Allied in its motion and to the introduction of evidence not used at the hearing regarding truck hydraulic systems.  The Union further maintains that the arbitration award was supported by the record and was not contrary to witness testimony.

As a preliminary matter, Allied makes much of Reeves' interpretation of the terms of the CBA and alleged "admissions" at the arbitration hearing.  However, the parties did not bargain for Reeves' interpretation but the arbitrator's.  Thus, Reeves' understanding of the CBA is not relevant.  As Allied's representative at the arbitration hearing said to Reeves about whether the November 5, 2011, incident qualified as an accident, "Well, you and I are going to see this differently, but we'll let the Arbitrator decide how things come out."  Transcript of Arbitration Hearing at 157:19-21.  This observation applies equally to interpretation of the CBA.

The Court reminds the parties that the question now is *not* whether the arbitrator was correct in his decision or whether the Court believes there was just cause to terminate Reeves.  On the contrary, the relevant questions are whether the arbitrator construed the CBA in making his award and whether that award violated explicit, well-defined, dominant public policy

7

…

ascertainable by reference to laws and legal precedents. *See Eastern Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000). For the following reasons, the Court finds the arbitration award was a result of the interpretation of the CBA and did not violate public policy such that the award should be vacated.

Allied first claims there is no evidence in the record to support the arbitrator's finding that the truck arm extended by itself in the November 7, 2011, incident. It cites in support of its position *Detroit Coil Co. v. International Association of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580-81 (6th Cir. 1979), which held that an award does not draw its essence from the CBA where there is no support in the record for the arbitrator's determinations. Allied is simply wrong in its assertion. In this case, the arbitrator considered Reeves' admission, relayed through an Allied witness' testimony, that his truck's hydraulic arm was fully retracted "when he came down the hill," Transcript of Arbitration Hearing at 187:1-2, prior to the November 7, 2013, accident. However, the arbitrator gave more weight to Reeves' good driving history and the truck's repair order history showing a problem with one of the truck's hydraulic systems to find that the arm's hydraulic system was likely malfunctioning at the time of the accident. That in retrospect – and after consideration of evidence that Allied failed to present to the arbitrator at the arbitration hearing to carry its burden of proof – it appears the arbitrator may have misunderstood the evidence or been wrong in his factual determination about the arm does not mean his finding found no support in the record or that his ultimate conclusion was not based in the CBA.

Allied next claims the arbitrator's finding that the Union did not follow progressive discipline was arbitrary and capricious where Reeves admittedly was involved in three accidents and had received two prior written notices before his termination. Again, Allied's argument is nothing more than that the arbitrator interpreted and applied the CBA incorrectly, not that he failed to interpret the CBA at all. *See Hill v. Norfolk & W. Ry. Co.,* 814 F.2d 1192, 1195 (7th Cir. 1987).

The arbitrator interpreted the CBA in light of the parties' past practice to mean that the three accidents that served as the basis for discharge must have been preventable.  Otherwise, they would not satisfy the requirement of "just cause" found in the CBA, especially where one of the accidents was minor, as was the November 5, 2011, accident.  The arbitrator's decision in this regard is neither arbitrary nor capricious but is based on the language of the CBA interpreted in light of the parties' past practices.

Noting Reeves' admission that only Allied can determine whether an accident is preventable (which, for the reasons stated above, the Court finds irrelevant), Allied argues that the arbitrator's decision that the November 7, 2011, accident was not preventable exceeded his authority.  In support of its argument, Allied points to *Morgan Services, Inc. v. Local 323, Chicago & Central States Joint Board, Amalgamated Clothing & Textile Workers Union*, 724 F.2d 1217 (6th Cir. 1984), in which the court vacated an arbitrator's award that ordered reinstatement of an employee who had been discharged for insubordination where the CBA provided for immediate discharge "without redress" for insubordination.  The court reasoned that the arbitration award found the employee to have been insubordinate, but ordered a remedy fundamentally at odds with the plain and unambiguous terms of the CBA calling for a specific discipline as a remedy for insubordination.  *Id.* at 1122-23.  The Court does not find *Morgan Services* persuasive in this case.  Unlike in *Morgan Services*, the arbitrator in this case did not find the condition that triggered a prescribed remedy – there, insubordination; here, three preventable accidents.  Perhaps *Morgan Services* would have been helpful to Allied had the arbitrator found three preventable accidents yet overturned the discharge, but that is not the case.  Allied has not demonstrated that the arbitrator in this case exceeded his authority by ignoring terms of the CBA.

In sum, the arbitration award in this case draws its essence from the CBA and is not a result of the arbitrator's dispensing his own brand of industrial justice.  *United Steelworkers of Am. v.*

9

*Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  Therefore, the Court will not vacate the award.

The Court turns now to Allied's final argument – that the award should be vacated because it violates public policy even though it may be rooted in the CBA.  Even if an arbitration award draws its essence from the CBA, it may be overturned if it violates public policy.  To justify vacating an award for this reason, the public policy in issue must be "explicit, well defined and dominant" and "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *Eastern Assoc. Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62 (2000) (internal quotations and citations omitted).  "[T]he judiciary may step in when the arbitrator has commanded the parties to violate legal norms (principally, but not exclusively, those in positive law) but . . . judges may not deprive arbitrators of authority to reach compromise outcomes that legal norms leave within the discretion of the parties to the arbitration agreement."  *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001).  Essentially, if the parties could have legally agreed to the award between themselves, the arbitrator can render the award without violating public policy.  *See, id.* at 580-81.

In *Eastern Associated Coal*, an arbitrator ordered an employer to reinstate a truck driver who had tested positive on random drug tests two times for marihuana use.  *Eastern Assoc. Coal*, 531 U.S. at 60.  The employer argued that the court should vacate the arbitration award because reinstatement of a drug user violated a public policy against allowing workers who used drugs to operate dangerous machinery.  *Id.* at 61.  The Supreme Court noted that the public policy exception to enforcing arbitration awards is narrow and should be applied with caution where Congress and the Executive Branch have established a detailed regulatory scheme governing the policy field.  *Id.* at 63.  The Supreme Court held that the regulatory scheme contained in United States Department of Transportation regulations, while evincing a policy of eliminating the use of

drugs by truck drivers, was also concerned with other policies, such as rehabilitation of truck drivers who have used drugs, and did not forbid reemployment of those who have tested positive for drug use.  *Id.* at 63-65.  The regulatory scheme also advanced labor policy by leaving leeway for the employer and the union to negotiate whether termination was an appropriate disciplinary action in response to a positive drug test.  *Id.* at 65.  The Supreme Court concluded that reinstatement of the truck driver who had twice tested positive for drugs did not violate any law or regulation and was consistent with the policies underlying those rules.  *Id.* at 66-67.

       Similarly to the employer in *Eastern Associated Coal*, Allied argues that returning Reeves to work would violate FMCSA regulations, 49 C.F.R. § 391.11(a)-(b), which prohibits a motor carrier from allowing a person to drive a commercial motor vehicle unless they "[c]an, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives."  49 C.F.R. § 391.11(b)(3).  This regulation requiring only safe drivers is not the sort of regulation that expresses "explicit, well defined and dominant" policy that can justify vacating an arbitration award.  *Eastern Assoc. Coal*, 531 U.S. at 62.  Unlike the question of whether a driver is of a certain age or possesses a certain type of driver's license, whether a driver can safely operate a vehicle is a nebulous concept that requires judgment.  Furthermore, the Court is mindful that the field of commercial truck safety is covered by a detailed regulatory scheme that reflects various competing policy interest.  Finally, Allied has not demonstrated that the law would have prohibited it from returning Reeves to work as a driver because of his three accidents.  Indeed, those accidents appear not to have prohibited Reeves' next employer from sending him back out on the road.  What Allied would not be prohibited from doing, the arbitrator is able to order.  *See George Watts & Son*, 248 F.3d at 580-81.

       For the foregoing reasons, the Court confirms the arbitration award in this case.  It now turns to whether it should sanction Allied under Rule 11 for bringing this case.

### IV. Rule 11 Sanctions

The Union asks the Court to impose sanctions on Allied under Rule 11 for filing the complaint in this lawsuit, which it believes is groundless and without legal precedent (Doc. 17). Allied responded to the motion (Doc. 20). In a related request (Doc. 21), Allied asks the Court to strike a brief filed by the Union captioned as a "Memorandum of Law in Support of Defendant's Counter-Petition to Confirm Arbitration Award" (Doc. 13). The Union has not responded to the motion to strike.

Rule 11 requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record," Fed. R. Civ. P. 11(a), and that such a signature is a certification that the filing is not frivolous and is not presented for an improper purpose, Fed. R. Civ. P. 11(b). The Court may sanction an attorney or a party that is responsible for a filing that violates Rule 11(b). Fed. R. Civ. P. 11(c)(1).

A party seeking sanctions under Rule 11(c) must file a motion for sanctions separately from other motions or requests. Fed. R. Civ. P. 11(c)(2); *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996). It must serve the motion for sanctions on the opposing party prior to filing it with the Court, and it can only file the motion if the opposing party fails to withdraw or correct the offending document within 21 days after service or another time set by the court. Fed. R. Civ. P. 11(c)(2); *Nisenbaum*, 333 F.3d at 804. "[T]he timely withdrawal of a contention will protect a party against a motion for sanction." Fed. R. Civ. P. 11 comment (1993).

The Court first addresses the motion to strike (Doc. 21) before turning to the motion for sanctions (Doc. 17). The memorandum of law Allied seeks to have stricken (Doc. 13) is a 20-page brief in which the Union attempts to refute arguments Allied made informally to the Union in response to the Union's pre-filing service of its Rule 11 motion. Ostensibly, the Union

offered the memorandum in support of its counterclaim, but in reality its purpose was to support the Union's motion for sanctions.  However, the Union has supported its motion for sanctions with another lengthy (21-page) brief (Doc. 17-2).  To allow 41 pages of briefing in support of a motion for sanctions would contravene Local Rule 7.1(d), which limits briefs in support of motions to 20 pages.  For this reason, the Court will strike the "Memorandum of Law in Support of Defendant's Counter-Petition to Confirm Arbitration Award" (Doc. 13).  The Court further strikes the attachment to that memorandum, which was belatedly filed seven weeks after the memorandum (Doc. 23).

Turning to the motion for sanctions (Doc. 21), the Union argues that the complaint is "frivolous in whole or part," which warrants sanctions under Seventh Circuit Court of Appeals precedent.  *See Hill v. Norfolk & W. Ry. Co.,* 814 F.2d 1192, 1203 (7th Cir. 1987).  The Union specifically points to Allied's public policy argument, which it never advanced to the arbitrator in the arbitration proceedings.  It further argues that the arbitrator's decision clearly found its essence in the CBA.  On the other side, Allied maintains it filed this case in good faith and with support in the record and urges the Court to consider sanctioning the Union for filing its Rule 11 motion.

The Court considers the circumstances of the present case in light of *Hill* and other similar cases and declines to issue sanctions.  While Allied's public policy argument is groundless, the Court does not believe its other arguments are as frivolous as those found worthy of sanctions in other cases.  Furthermore, the Court does not believe it would be worthwhile to try to sort out which of the Union's attorney's fees are attributable to its frivolous arguments, its colorable arguments, or its superfluous filings (which have been stricken).  *See id.* at 1200 (citing *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1168 (7th Cir. 1984)).  For these reasons, the Court will deny the Union's motion for sanctions (Doc. 21) but cautions Allied

that the Court of Appeals is unlikely to be so generous should that court consider this case. Allied is warned that it appeals at its own peril.

V. **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** Allied's motion to strike (Doc. 21);

- **STRIKES** the Union's a "Memorandum of Law in Support of Defendant's Counter-Petition to Confirm Arbitration Award" (Doc. 13) and its supporting exhibit (Doc. 23);

- **DENIES** Allied's motion for summary judgment (Doc. 18);

- **GRANTS** the Union's motion for summary judgment (Doc. 28);

- **CONFIRMS** the Arbitrator's Decision and Award dated December 26, 2012;

- **DENIES** the Union's motion for sanctions (Doc. 17); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: October 10, 2013**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**